**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**EASTERN DIVISION**

**TRINITY USA OPERATING, LLC**                                                              **PLAINTIFF**

**V.**                                                              **CAUSE NO. 4:11-CV-00106-CWR-LRA**

**MOLLIE ODOM BARKER, ET AL.**                                                              **DEFENDANTS**

**ORDER OF DISMISSAL**

The above-styled matter is before the Court on the Motion for Temporary Restraining

Order, Preliminary Injunction and Permanent Injunction [Docket No. 11] of Trinity USA

Operating, LLC. Having considered the arguments offered in support of the motion and the

evidence tendered at a live hearing on July 8, 2011, along with the record as a whole, the Court

has concluded *sua sponte* that a lack of a live case or controversy demands this case's dismissal.

**FACTS**

Trinity USA Operating, LLC (hereinafter "Trinity") is a drilling company based in

Houston, Texas. According to its Complaint [Docket No. 1], Trinity holds mineral rights to a

large tract in Wayne County, Mississippi, in which Mollie Odom Barker and her co-defendants

(hereinafter "defendants") control the surface rights. At the hearing, through its counsel, Trinity

advised that it owns mineral interests/leases and exploration rights in Wayne County, *see*

Transcript at 1, 36, and that it is currently undertaking a seismic exploration project in Wayne

County covering approximately 25,000 acres over 39 square miles.

At some point prior to June 6, 2011, and possibly as early as January, Trinity began

advising the surface dwellers, including the defendants, of its intent to enter the land for the

purpose of conducting seismic exploration, a process that requires laying sensitive "listening"

1

devices to detect the sound-wave patterns from controlled, underground explosions. Although it claims that it bore no such obligation, Trinity attempted to contract with the surface dwellers for their blessings to enter the land; in exchange, Trinity offered small sums of money that varied according to each surface dweller's acreage.[1]

Many of the surface tenants acceded to Trinity's requests, but others did not. Those who did not constitute "a very small percentage."[2]  And on June 17, 2011, Trinity sued the land owners who either had not agreed to the company's terms or had failed to respond to the letter. Specifically, Trinity sought injunctive relief enjoining the defendants from preventing Trinity's exploration. As counsel for Trinity explained at the July 8 hearing,

> the reason we have initiated this action is really to protect our crew when is [*sic*] they go out on the properties and make sure we are not going to be charged with trespass and that they are able to – they can safely execute their operation and will not be forced out because at the end of the days [*sic*] it [is] a large financial obligation . . . .

Transcript at 5.[3]

On June 21, 2011, Trinity moved the Court for a temporary restraining order, a

---

[1] Trinity represented to the Court that it had conducted title searches of the land and sent letters to all the owners of the various properties. In the letters, Trinity "offered [surface dwellers] the opportunity to execute a permit for Trinity to conduct surface operations over these lands and for which [surface dwellers] would be paid a total of $10.00 per acre."

[2] At one point in the live hearing, plaintiff's counsel represented that the percentage of acres that would be the subject of any injunction was only 1.4 percent.

[3] Counsel elaborated by explaining that the exploration costs Trinity approximately $32,000 per day, and that Trinity was concerned that if a landowner were to call the sheriff or otherwise interfere with its rights to conduct its operations, then it would incur significant financial costs. Therefore, Trinity "brought this motion here today to confirm our right to be on the property and to obtain the relief we are asking." Transcript at 5. At the time of the hearing, Trinity had begun its operations and expected that the job will be completed within a couple of months. Transcript at 7, 28.

preliminary injunction, and a permanent injunction [Docket No. 11]. The Court conducted a telephone conference with Trinity's attorneys on June 24, 2011, and ordered them to provide notice of the hearing date to the defendants.

The hearing was held on July 8, 2011. At the hearing, Trinity presented testimony from Charles Morrison, its consulting geophysicist, regarding the manner in which it conducts its seismic explorations, specifically noting the care that Trinity undertakes to avoid disturbing anything on the property, including topsoil, pipelines houses, water wells, trees, or any agricultural objects such as livestock. Moreover, immediately prior to moving onto a tract, Trinity makes contact with the consenting landowners to advise them that they are en route so as not to show up unannounced.

Morrison also testified that any refusals by the defendants to allow entry onto their lands would cost Trinity approximately $32,000 per day – approximately $3,200 per hour for a ten-hour day. Morrison explained to Trinity's attorney in the following colloquy:

[Attorney]:    And in the event that your [*sic*] prohibited from going on a particular piece of property, how does that affect your crews and how you continue with the [seismic exploration]?

* * *

[Morrison]:    It would potentially shut us down for a period of time depending on where it is. It could basically shut – it could have affect [*sic*] the shutting the operation down if we can't get in the [shots] before we complete . . . . It would certainly be detrimental.[4]

―――――――――――

[4] Morrison further explained that a denial of access to certain properties could negatively affect the reliability of Trinity's data and could end up causing it to have to spend several additional million dollars. Transcript at 27. In addition, if their exploration uncovers certain minerals, then Trinity would seek to lease the mineral rights from the owners, and those leases generally are for 36 months but may last for 60 months. Transcript at 42.

Transcript at 26.

Woody Jordan, a named defendant, who had been served on June 28, also appeared *pro se* at the hearing. Jordan advised that he did not have an attorney and wanted to learn the outcome of these proceedings before he decided whether to retain counsel. Jordan offered his concerns to the Court regarding Trinity's request, but he declined to offer evidence in his defense. However, he was permitted to question Morrison, the only witness offered by Trinity. No other defendant appeared, and no other testimony was provided.

## ANALYSIS

Temporary restraining orders, preliminary injunctions, and permanent injunctions are extraordinary forms of relief. *Ridgely v. FEMA*, 512 F.3d 727, 734 (5th Cir. 2008). Although this observation rises frequently from courts considering requests for such orders, the enormity of the relief is difficult to overstate. *See generally* Wright, Miller & Kane, *Federal Practice and Procedure*: Civil 2d § 2948 (noting that courts describe such requests as "drastic," "extraordinary," and the requesting party must make a "clear showing"). In essence, a movant for pre-trial, injunctive relief represents to the court that its case is so particularly unusual, the strength of its case so particularly great, and the risk of incurable injury so particularly unbearable that the promise of a typical day in court ultimately will serve no practical purpose. Therefore, in order to preserve the possibility of a meaningful decision, courts are empowered by Rule 65 of the Federal Rules of Civil Procedure to enjoin a party's behavior without a trial on the merits if the movant is able to make four showings:

> (1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury in the injunction is not issued, (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted,

4

and (4) that the grant of an injunction will not disserve the public interest. *Janvey v. Alguire*, 628 F.3d 164, 174 (5th Cir. 2010). *See also Schindler v. Schiavo*, 403 F.3d 1223, 1225 (11th Cir. 2005) (same factors govern both temporary restraining orders and preliminary injunctions).

These elements are not arbitrary and disconnected; rather, they enjoy a direct relationship such that the strength of one showing lessens the necessity of another. For example, a movant with a clear, unchallengeable right to legal relief will have a lighter burden of proof regarding the risk of irreparable injury; likewise, a party seeking to enjoin behavior that undoubtedly will result in a wound that no court could possibly heal will be entitled to an injunction even when its likelihood of success on the merits is less than indisputable. *See Triebwasser & Katz v. AT&T*, 535 F.2d 1356, 1359 (2nd Cir. 1976); *Kamine/Besicorp Allegany L.P. v. Rochester Gas & Elec. Corp.*, 908 F. Supp. 1180, 1187 (W.D.N.Y. 1995). *See also* Wright, Miller & Kane, *supra*, at § 2951 (courts balance the harms that may be caused by the granting or the denial of injunctive relief; "therefore, when the injury that allegedly will result if the restraining order is denied is very grave, less of a showing is required than if the injury would be slight.").

But "[p]erhaps the single most important prerequisite for the issuance of a preliminary injunction is a demonstration that if it is not granted the applicant is likely to suffer irreparable harm before a decision on the merits can be rendered." *Id*. at §2948.1. *Accord Norwalk Core v. Norwalk Bd. of Educ.*, 298 F. Supp. 203, 206 (D. Conn. 1968) (citing *Capital City Gas Co. v. Phillips Petroleum Co.*, 373 F.2d 128, 131 (2nd Cir. 1967)). The importance of irreparability cannot be overstated; generally speaking, the injury must affect something that money simply cannot buy.

But even a flawless showing on one element will not excuse a total absence of proof on another. *Fanning v. High Mountain Inspection Servs., Inc.*, 520 F. Supp. 2d 55, 58 (D.D.C. 2007). Furthermore, it bears noting that although the denial of a request for a temporary restraining order or preliminary injunction "may work injury to the movant, this alone is insufficient to compel its issuance." *Norwalk Core*, 298 F. Supp. at 206.

Upon review of the pleadings, arguments, the transcript of the proceedings, and governing authority, the Court is satisfied that Trinity has shown beyond any reasonable dispute that

> a mineral owner or a lessee of the mineral estate, in the absence of additional rights expressly conveyed or reserved, may use as much of the surface as is reasonably necessary to exercise its right to recover minerals, without liability for surface damage. This right means that the mineral lessee can go on the land and do all those things necessary and incidental to the drilling of a well . . . .

*EOG Resources, Inc. v. Turner*, 908 So. 2d 848, 854 (Miss. Ct. App. 2005) (Chandler, J.).

Aside from the state of Mississippi law, though, Trinity has shown this Court very little. Although Trinity contends that it owns the mineral rights to the tracts of land occupied by the defendants, it has submitted no substantial evidence to prove that claim.[5] The Court has seen no contracts and heard no testimony reflecting Trinity's legal right to the minerals beneath the defendants' lands. But what causes the Court the most concern is the fact that Trinity has offered no proof that the injury to be suffered at the defendants' hands is an irreparable one – only that it is an expensive one.

---

[5] The Court relied upon the representation of counsel and thus finds that Trinity had identified and notified each property owner and had made an attempt to negotiate with them on the access to and use of the property. Similarly, the Court is satisfied that counsel for Trinity provided notice of the hearing to the defendants.

The total absence of evidence of irreparable harm which is disconnected from a fear of costing Trinity more money raises a red flag and counsels the Court to slow its hand and not grant such extraordinary relief.[6]

A case from the Texas Court of Appeals is instructive on this point. In *Browning v. Mellon Exploration Co.*, 636 S.W.2d 536 (Tex. Ct. App. 1982), the Court affirmed a trial judge's decision to enjoin surface dwellers from interfering with a drilling company's oil well, much as Trinity urges this Court to do. However, in *Browning*, "the trial court's order contained an express finding that [the company] [wa]s the exclusive owner of the oil, gas and mineral lease on the land in question," and "[t]he trial court also found that the [surface dwellers] ha[d] substantially interfered with [the company]'s right of access . . . ." *Id.* at 539. In the case at bar, Trinity has not provided substantial evidence on which this Court could reach conclusions like those at which the *Browning* trial judge arrived.

Chiefly, Trinity's motion rests on the theory that the daily loss of $32,000 would amount to an irreparable injury. But that position lacks merit. Generally speaking, "[a]n injury is

---

[6] Admittedly, at the close of the hearing, the Court indicated an inclination to grant the requested relief. But after reviewing the transcript, the Court found no testimony offered concerning irreparable harm that could not be solved through future monetary relief. In fact, after a recess during the hearing, the Court posed the specific question to counsel: "[W]hat is the irreparable harm other than right now the loss of $362,000 [*sic*] in damages that I presume Trinity believes it cannot recover." Transcript at 44.  In response, Trinity's lead and co-counsel mentioned lost business opportunities, a fear that Trinity might lose some business contracts, and a further concern that it might lose some mineral leases. "It is not," the attorneys answered, "it's not just $32,000 a day[,] it's not just the $4.4 million tied up on the project. There are any number of ramifications beyond just the dollar value of every day that we're not allowed access to the property." Transcript at 45. On reflection, that averment is too speculative to support the drastic relief that Trinity requests. *See, e.g.*, *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bishop*, 839 F. Supp. 68, 74-75 (D. Me. 1993) (claims of loss of good will and future economic injury too speculative for court to grant injunctive relief).

'irreparable' only if it cannot be undone through monetary remedies." *Deerfield Med. Ctr. v. City of Deerfield Beach*, 661 F.2d 328, 338 (5th Cir. 1981). Exceptions to that rule exist. For example, "when economic rights are especially difficult to calculate, a finding of irreparable harm may be appropriate." *Lakedreams v. Taylor*, 932 F.2d 1103, 1109 (5th Cir. 1991). Likewise, a movant demonstrates the possibility of an irreparable injury "when it is shown that a money judgment will go unsatisfied absent equitable relief." *Alvenus Shipping Co., Ltd. v. Delta Petroleum (U.S.A.) Ltd.*, 876 F. Supp. 482, 487 (S.D.N.Y. 1994) (cited by *Specialty Healthcare Mgmt. v. St. Mary Parish Hosp.*, 220 F.3d 650, 658 (5th Cir. 2000)). But Trinity has not even argued, much less proven, that either of those exceptions is appropriate in this case. On the contrary, Trinity's primary argument is that the defendants' actions stand to result in the loss of tens of thousands of dollars per day. Grievous though such an injury would be, it is not without the possibility of remedy and, therefore, is not irreparable. Injunctive relief cannot rest on such an unproven foundation

Although it did not present substantial evidence on this point, Trinity argued – without any hint of specificity – at the July 8 hearing that any delays created by the defendants' behavior could result in lost business opportunities. *See supra*, n.6. The absence of substantial evidence on that point is reason enough to deny Trinity's motion because a "[s]peculative injury is not sufficient[.] . . . [A] preliminary injunction will not be issued simply to prevent the possibility of some remote future injury." *United States v. Emerson*, 270 F.3d 203, 262 (5th Cir. 2001). But the risk of lost business opportunities, like the fear of a $32,000 daily loss, is not an injury that is irreparable in character. *See Baja Contractors, Inc. v. City of Chicago*, 830 F.2d 667 (7th Cir. 1987) (reversing injunction granted in favor of corporation that had alleged its lost business

opportunities would amount to irreparable injury); *In re Sabratek Corp.*, 257 B.R. 732, 737 (Bankr. D. Del. 2000); *New Pac. Overseas Group (USA) Inc. v. Excal Int'l Dev. Corp.*, 1999 WL 285493, *7 (S.D.N.Y. 1999); *IPT Co., Inc. v. United States Dept. of Treasury*, 1992 WL 212437, *4 (S.D.N.Y. 1992) (citing *Miss America Org. v. Mattel, Inc.*, 945 F.2d 536, 545-46 (2nd Cir. 1991)); *Weston Servs., Inc. v. NUS Corp.*, 1991 WL 32824, *6 (E.D. Pa. 1991). Lost business opportunities resting on more than pure speculation can, like any other form of monetary damages, be proven in the course of normal litigation.

When a party moves for a temporary restraining order or preliminary injunction, the burden of proof is a heavy one. Earlier this year, this Court heard a motion for a preliminary injunction filed by a business against one of its competitors for employing what the plaintiff alleged to be an illegal business practice. The parties called several witnesses and introduced binders full of documents in a hearing that lasted a full day, and even in light of that great body of evidence, this Court still did not grant the preliminary injunction. *See* Order [Docket No. 20] in *Bond Pharmacy v. AnazaoHealth Corp.*, No. 3:11-cv-00058-CWR-FKB. As the Court observed in that case, the burden of proof in this setting is an "extraordinarily high standard." Order at 5. In the case at bar, Trinity simply has not met it.

The record before the Court could not support the conclusion that the injury Trinity fears is an irreparable one, and therefore, the motion for a temporary restraining order and related relief would not be well taken. But ultimately, Trinity's case must be dismissed altogether for a more fundamental reason: not only has Trinity failed to show that it faces an irreparable injury, but it has not even alleged that a live case or controversy exists.

Federal courts enjoy only limited jurisdiction, and under Article III of the Constitution,

9

"[a] federal court is without power . . . to give advisory opinions which cannot affect the rights of the litigants in the case before it." *St. Pierre v. United States*, 319 U.S. 41, 42 (1943). "[T]he party seeking relief must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision." *Spencer v. Kemna*, 523 U.S. 1, 7 (1998) (quotations omitted).

Upon review of the transcript from the July 8 hearing, it is now apparent to the Court that the case at bar fails to present an actual injury or threat thereof. Although Trinity contended in its Complaint that the "[d]efendants have denied, and continue to deny, Trinity access to and use of [d]efendants' [l]ands for Trinity's seismic exploration operations," Complaint at 16, counsel for Trinity made clear at the July 8 hearing that its prayer for relief is purely prospective in nature. The plaintiff's attorney candidly advised the Court that "the reason we have initiated this action is really to protect our crew when . . . they go out on the properties and make sure we are not going to be charged with trespass and that they are able to – they can safely execute their operation and will not be forced out." *See supra* at 2. But the Court was presented with neither evidence nor suggestion that Trinity had approached a piece of property and was turned around by a particular landowner. The sheriff had not been called. No threats have been made. There has been now showing that any particular landowners will interfere with Trinity's rights. Nothing has happened. *Cf. Adobe Sys., Inc. v. South Sun Prods., Inc.*, 187 F.R.D. 636, 641 (S.D. Cal. 1999) (specific facts must be demonstrated to justify enjoining party, and petitioner simply cannot rely on the weight of its claims).

Similarly, Trinity's attorney told the Court at another point during the hearing that Trinity "has sought to negotiate with the surface owners to [acquire] permits and to compensate them for

the right to go across the property," and that each defendant declined to make a deal. Transcript at 2. But even if that allegation were true, such refusals would not amount to invasions of the rights that Trinity claims to hold because the defendants were under no legal obligations to accede to Trinity's offers. To put it another way, Trinity does not claim that the defendants actually have interfered with its seismic exploration or have threatened to interfere with it; Trinity merely claims that the defendants declined to agree to contracts that would have provided for Trinity's entry upon the surface of the land. Trinity had no right to such an agreement, and therefore, its legal rights have not been injured.

When and if a defendant actually impedes Trinity in the exercise of a legal right or threatens so to act, then a live case or controversy might exist – perhaps even one that presents a set of facts warranting the issuance of injunctive relief. But for now, the record before the Court demonstrates not only that Trinity has not suffered an irreparable injury, but that it has not yet suffered *any* actionable injury.

It is well established that federal courts must consider the question of jurisdiction even if not raised by the parties. *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 919 (5th Cir. 2001). Moreover, if at any point during the life of a case a lack of subject-matter jurisdiction becomes apparent, then a federal court is obligated to dismiss. *Alvarez v. Smith*, ___ U.S. ___, 130 S. Ct. 576, 580 (2009). That obligation has presented itself to the Court and, under the limits imposed by Article III, leaves room for only one course of action.

Therefore, the case is dismissed for lack of a live case or controversy, and the plaintiff's motion for a temporary restraining order and related relief is dismissed as moot. A Final Judgment will be entered to this effect.

11

SO ORDERED this Twenty-First day of July 2011.

/s/ *Carlton W. Reeves*

Hon. Carlton W. Reeves
United States District Court Judge